FILED
September 23, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003789715

G. MICHAEL WILLIAMS (#114597)
GANZER & WILLIAMS
1617 ST. MARK'S PLAZA, STE. A
STOCKTON, CA 95207
Telephone: 209-476-1661
Facsimile: 209-476-1674

Attorneys for Debtor
Atman Hospitality Group, Inc.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>ATMAN HOSPITALITY GROUP, Inc.,<br><br>Debtor. | Case No. 11-42576<br>DC: GMW-2<br>Date: TBD<br>Time: TBD<br>Dept: B |

### DEBTOR'S MOTION FOR APPROVAL OF USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS

TO THE HONORABLE JUDGE THOMAS C. HOLMAN:

Atman Hospitality Group, Inc., as Debtor and Debtor-in-possession (the "Debtor"), in the above captioned case, hereby moves this court for entry of order, substantially in the form filed concurrently with this motion (the "Proposed Interim Order") pursuant to the provisions of Section 363 of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules, for the approval of the Debtor's use of cash collateral, on both an interim and final basis, to pay expenses necessary to maintain the Debtor's ongoing post petition hotel operations and administer the Debtor's Chapter 11 case.

///

1

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. Section 157(b)(2). Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory bases for the relief requested herein are Section 105(a), 361, 363, 541, 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

The Debtor is a California corporation. The Debtor's property consists primarily of a 120 room hotel facility known as the Shasta Gaia Hotel (the "Business") located at 4125 Riverside Place in Anderson, California (the "Hotel Property"). The Debtor also owns a parcel of bare land located in Merced, Merced County, California (the "Merced Property"). The Merced Property does not generate any rental income.

The Debtor commenced this Chapter 11 case after a thorough review of all of its refinancing and restructuring alternatives and only after it became clear that an out-of-court alternative would not be completed in sufficient time to avoid a pending foreclosure scheduled for September 20, 2011. On September 19, 2011 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

The Debtor continued after the Petition Date in the possession of the Hotel Property and management of the Business as Debtor-in-Possession pursuant to 11 U.S.C. Sections 1107 and 1108.

The Debtor cannot successfully operate the Business without the use of cash for the continued payment of operating expenses, taxes, and other expenses incurred in the ordinary course of the operation of the Business.

The Debtor has not completed its schedules and statements of financial affairs but has taken substantial steps to complete them.

The Debtor has approximately 60 employees.

With respect to the Debtor's cash collateral (the "Cash Collateral"), and the subject of this motion, Far East National Bank (the "Bank"), may claim an interest in such Cash Collateral.

The Debtor has a commercial deed of trust with the Bank for the original principal sum of $11,450,000.00 (the "Deed of Trust") and this Deed of Trust encumbers both the Hotel property and the Merced Property. The current balance is approximately $11,315,000.00. Pursuant to the Deed of Trust, the Bank has an assignment of rents, which the Debtor submits may include the day-to-day income from the operation of the Business.

The Debtor does not have sufficient unencumbered cash or property from which to obtain cash to use in the continued operation of Business in this proceeding. The Debtor has no alternative source from which to borrow or otherwise obtain cash with which to continue the operation of the Business in this proceeding. The Debtor is entitled to, and must have, immediate authority to use the Cash Collateral in order to continue the operation of the Business without interruption during the Debtor's efforts to develop a plan of reorganization for the benefit of all of its creditors. The Cash Collateral will be used by the Debtor for the purposes of paying:

A.  Its actual operating expenses, which are the same or similar to those experienced by it in the past operation of the Business and which are necessary to the continued operation of the Business;

B.  Maintenance and preservation of the property of the estate;

C.  Current taxes incurred in the operation of the Business; and

D. Payment of expenses associated with this Chapter 11 case, including United States Trustee's fees and professional fees and expenses.

If the Debtor is not authorized to use the Cash Collateral, it will be forced to immediately cease operation of the Business and will not be able to pay expenses that it has currently incurred.

Ceasing operation of the Debtor will result in immediate and irreparable harm to the estate and its creditors. Use by the Debtor of the Cash Collateral in accordance with the terms and conditions set out in this motion are in the best interest of the creditors of the estate.

The Debtor proposes to provide adequate protection to the Bank in exchange for use of the Cash Collateral by operating through an approved budget and maintaining the Collateral by means such as continued management of the Business and payment of monthly insurance and taxes escrow and interest payments.

**LEGAL DISCUSSION**

The Debtor respectfully submits that the use of Cash Collateral as proposed herein is proper and supported by applicable law, as follows:

**A. To The Extent That Claims Are Secured, Each Are Adequately Protected.**

Section 363 provides that a debtor may use cash collateral if (i) the entity with the interest in the cash collateral consents or (ii) the court authorizes such use. Furthermore, Section 363(e) of the Bankruptcy provides that:

On request of an entity that has an interest in property used… or proposed to be used… by the debtor-in-possession, the court… shall prohibit or condition such use… as is necessary to provide adequate protection of such interest. The concept of adequate protection is not defined in the Bankruptcy Code except by the implication of the examples of adequate protection listed

4

in Section 361. *In Re: Beeker Industries, Corp,.* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

Under Section 361, adequate protection may be provided by cash payments or additional or replacement liens. *In Re: Mullen,* 172 B.R. 473, 476 (Bankr. Mass. 1989). Here, replacement liens will provide the required adequate protection: as long as the Debtor's cash flow is positive it is generating more cash than it is expending, and the secured claim in replacement liens will more than cover the amounts expended.

In addition, the very act of preserving the value of Business operations will continue to generate replacement revenues, as well as preserve the integrity of the estate, thus in and of itself will provide production.

**B.     Authorizing Use Of Cash Collateral Is Necessary And In The Estate's Best Interest.**

It is well established that a Bankruptcy Court, where possible, should be flexible in applying adequate protection standards to enable debtors to maximize value, in order to encourage the debtor's efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard. *In Re: O'Connor,* 808 F.2d 1393, 1397-98 (10th Cir.1987). For example, in *In Re Stein,* 19 B.R. 458, 460 (Bankr.E.D.PA 1982), the court allowed a debtor to use cash collateral, although the secured party was under secured because the court found that the use of cash collateral was necessary to the debtor's continued operation and the creditor's secured position can only be enhanced by continued operation of the debtor's business.

The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. *In Re: Mosell,* 195 B.R. 277, 288 (Bankr. S.D.N.Y 1996).

As noted above, the Debtor requires immediate access to Cash Collateral to continue normal business operations. Facilitating the continued operations of the Debtor will allow the Debtor to maximize assets for the ultimate benefit of the Debtor's secured and unsecured creditors. For these reasons, the Debtor submits that authorizing the use of the Cash Collateral is necessary and in the best interest in the Debtor's estate and its creditors.

Without the use of the Cash Collateral, the Debtor would have no ability to operate its business because it would be unable to pay its employees, vendors and others. As a result, without the use of Cash Collateral, the Debtor would be unable to maintain the business to the detriment of all other creditors.

Courts have routinely held that adequate protection may be demonstrated by showing that the going concern value of the Debtors or the value of the lender's collateral, is preserved by the Debtors continuing operation and use of the collateral. *In Re: JKJ Chevrolet, Inc.* 117 F. 3d 1413 (4th Cir. 1997); *In Re: Snowshoe Company, Inc,.* 789 F. 2d. 1085, 1087 (4th Cir. 1986); *In Re: 499 West Warren Street Associates, L P.*; *In Re: Constable Plaza Associates, LP*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991).

Similarly here, the Debtor intends to use the Cash Collateral to operate the Business. The proposed cash expenditures are necessary to preserve and maintain the value of the Business and the interest of creditors. Therefore, use of Cash Collateral in the manner proposed is absolutely necessary to preserve the overall value of the Debtor's ongoing enterprise and enhance the chances of a successful outcome of this case. If the Debtor is precluded from making expenditures necessary to maintain its assets, all creditors- secured and unsecured- will be harmed. This, in and of itself, justifies the relief sought herein. See, eg., *In Re: Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. PA 1991). "The important question, in determination

of whether the protection to creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized."

Accordingly, use of Cash Collateral is proposed herein as both necessary and in the best interest of all creditors, including the potential lien holders.

## INTERIM APPROVAL IS APPROPRIATE

Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral may not be commenced not earlier than 15 days after the service of such motion. Upon request, however, the court is entitled to conduct a preliminary hearing on such motion on an expedited basis, and to authorize the use of that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the debtor's estate. As stated herein, the Debtor also respectfully requests the relief sought in the motion be granted initially on an interim basis, through November 2011, so that there will be no undue interruption of the business operations or lack of funding. Under the circumstances of this case, particularly given the adequate protection measures proposed herein, the Debtor respectfully submits that such interim relief is fully justified.

## CONCLUSION

WHEREFORE, based on all the foregoing, the Debtor respectfully requests that this court enter an order, substantially in the form of the Interim Order, granting the relief herein requested and such other and further relief as the Court may deem just and proper.

Dated: September 23, 2011.

G. MICHAEL WILLIAMS
GANZER & WILLIAMS

By:/s/ G. MICHAEL WILLIAMS
Attorneys for Debtor

Lmd:atman.use.mo.

7