McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Attorneys for MICHAEL G. KASOLAS,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>ATMAN HOSPITALITY GROUP, INC.,<br><br>Debtor. | Case No. 11-42576<br><br>Chapter 11<br><br>DC No. MLG-006<br><br>**DECLARATION OF MICHAEL G. KASOLAS IN SUPPORT OF MOTION FOR TRUSTEE'S USE OF CASH COLLATERAL**<br><br>Judge: Hon. Thomas C. Holman<br>Time: 9:32 a.m.<br>Date: January 24, 2012<br>Place: 501 I Street, 6th Floor<br>       Courtroom 32<br>       Sacramento, California |

I, MICHAEL G. KASOLAS, declare as follows:

1. I am an individual and the appointed Chapter 11 trustee of the estate (the "Estate") of Atman Hospitality Group, Inc. (the "Debtor") in the above-entitled action. I am over 18 years old. I have personal knowledge of the facts set forth herein except as otherwise state, and if called as a witness, I could and would competently testify thereto. This declaration is submitted in support of the MOTION FOR TRUSTEE'S USE OF CASH COLLATERAL (the "Cash Collateral Motion").

2. The Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code, on September 19, 2012. I was appointed to serve as the Chapter 11 trustee in the Debtor's case, and this Court approved my appointment on December 6, 2012.

3. The Debtor's principal asset is an approximately 120-room hotel located in Anderson California, known as the Gaia Shasta Hotel (the "Hotel"). The Hotel operations include an on-site restaurant known as the Woodside Grill (the "Restaurant") and a spa. I am informed that construction was completed in 2008, although some intended elements of the original design could not be completed due to lack of funds.

4. My investigation to date indicates that construction of the Hotel and Restaurant was financed through approximately $7 million of investor money and a loan from Far East National Bank (the "Bank") of approximately $11 million. The Bank asserts that its loan is secured by a blanket lien on the Debtor's assets.[1] I have not yet had the opportunity to conduct due diligence regarding the Bank's claims and secured status. Although I intend to perform the necessary due diligence, I do not presently have any reason to believe that the Bank's claims are not valid.

5. I have engaged Hostmark Investors, LP ("Hostmark") was my management consultant to operate the Debtor's business. Hostmark appears to have a great deal of experience in hospitality management, including significant experience with distressed properties and with "green" properties.

6. My preliminary evaluation is that the Hotel and Restaurant should continue to operate during the next sixty to ninety days, while a more thorough evaluation is conducted. Based on the information available to me at this time, I have determined that this will maximize the value of the estate for its creditors while a long term strategy is developed. It is apparent that the value of the Hotel and Restaurant are substantially greater as a going concern.

7. I have entered into a SECOND STIPULATION FOR TRUSTEE'S USE OF CASH COLLATERAL with the Bank, filed concurrently herewith (the "Second Stipulation"), which

---

[1] The Trustee is informed that the Bank's lien may not extend to certain undeveloped real property located in Merced, California, held by a solely owned subsidiary of the Debtor.

provides for the use of cash collateral through March 31. Use of cash collateral under the Second Stipulation is based on the 90-day budget attached as Exhibit A to the Stipulation (the "Budget").

8. At my direction, Hostmark prepared the Budget, which contains my and Hostmark's predictions as to revenue and expenses of the Hotel and Restaurant through March 31, 2012. The Budget is based on the prior year financial information provided by the Debtor. The Trustee and Hostmark have not yet had sufficient time to conduct a thorough evaluation of the Debtor's financial situation, but the Budget represents a best estimate based on current information.

9. Based on the information currently available, it appears that the liquidation value of the Debtor's assets would be significantly less than the value as an operating business. Hostmark has informed the Trustee that, given minor improvements and upgrades, it expects the Debtor's revenues to meet or exceed those stated in the Budget.

10. Although I have not had the opportunity to conduct a thorough review or complete my analysis, it appears that the Bank holds a duly perfected and enforceable security interest in substantially all of the Debtor's assets, excepting the Merced property, and enjoys "cash collateral" rights with respect to much of the Debtor's revenues. I believe that it would be unproductive to attempt to invalidate The Bank's security interest at this stage. Conversely, it would not be appropriate to bind the Estate to resolutions of the validity and extent of the Bank's liens until an investigation can be completed. The relief sought by the Cash Collateral Motion is intended to be without prejudice to the rights of the parties with regard to the Bank's security interest.

11. In order to consent to use of cash collateral, the Bank has required that it be provided a replacement lien in assets acquired by the Debtor post-petition. Based on the information currently available, it appears clear that use of cash, including cash collateral, is essential to the preservation of the Debtor's business and going concern value. Thus, based on the information available to me, I believe that providing the replacement liens in order to secure the use of cash collateral to operate the Hotel and Restaurant is in the best interests of the Estate, the Bank, and the Debtor's creditors and other interest holders

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed January 3, 2012, at San Francisco, California.

           /s/ *Michael G. Kasolas*
           Michael G. Kasolas